IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ELIZABETH J. LYKE, | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | Case No. 3:08-cv-0510 |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Griffin |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|    *Defendant*. | ) | |

## ORDER

Pending before the Court is Plaintiff Elizabeth J. Lyke's ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 16) with supporting Memorandum (Doc. No. 17). Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Response (Doc. No. 20), and then Plaintiff filed a Reply (Doc. No. 21). Magistrate Judge Griffin issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 23.) Plaintiff filed Objections to the Report. (Doc. No. 24.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I.    **BACKGROUND**

   *A. Procedural Background*

Plaintiff filed an application for disability insurance benefits with the Social Security Administration ("SSA") on June 6, 2005. (Tr. 93-95.) In her application, Plaintiff asserted disability due to Chronic Obstructive Pulmonary Disease ("COPD") and a right foot injury. (Tr.

1

93, 108.) Although Plaintiff's disability application did not mention any other complaints, she reported suffering from several other illnesses, including hypertension, pedal edema, and a history of post traumatic stress disorder ("PTSD"), during a subsequent examination by a state agency consultative physician. (Tr. 250-51.) The state agency consultative physician also diagnosed her with obesity. (Tr. 259.) Her application was denied initially and upon reconsideration. (Tr. 54-56, 58-59.) A hearing before Administrative Law Judge ("ALJ") John P. Gardner was held on March 20, 2007. (Tr. 27-49.) The ALJ delivered an unfavorable decision on September 26, 2007. (Tr. 12-20.) The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since March 2, 2002, the alleged onset date (20 CFR 404.120(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: limited pulmonary functioning (chronic obstructive pulmonary disease [COPD], asthma and recurrent allergies); and obesity (height variously measured at 60-64 inches [5 feet to 5 feet, 4 inches] and weight ranging from about 230-250 pounds) (20 CR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. The claimant has the residual functional capacity to perform sedentary work (lift/carry up to 10 pounds, stand/walk for 2 out of 8 hours and sit for 6 out of 8 hours) with occasional postural activities and no exposure to concentrated pulmonary irritants.

6. The claimant is capable of performing past relevant work as a grading clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from March 2, 2002, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 14-20.)

On April 11, 2008, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 2-4.) On May 16, 2008, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the ALJ's final decision. (Doc. No. 1.) On October 28, 2008, Plaintiff filed a Motion for Judgment on the Record (Doc. No. 16), to which the Commissioner responded on December 23, 2008 (Doc. No. 20). Plaintiff filed a reply on December 29, 2008. (Doc. No. 21.) On April 25, 2011, Magistrate Judge Griffin recommended that the Commissioner's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 23.) Plaintiff filed several objections to the Magistrate Judge's findings on May 5, 2011:

1. Plaintiff objects to the Report's recommended finding that the ALJ did not err in rejecting a treating physician's opinion in favor of the opinion of a non-examining source.

2. Plaintiff objects to the Report's recommended finding that the ALJ appropriately declined to seek the testimony of a medical expert and adequately considered Plaintiff's obesity before deciding that Plaintiff's impairments did not medically equal Listing 3.02.

3. Plaintiff objects to the Report's recommended finding that the ALJ did not err in relying on the testimony of the vocational expert, and that his failure to comply with SSR 00-4p is a harmless error.

(Doc. No. 24.) The Court considers the merits of Plaintiff's objections below.

B. *Factual Background*

The Court adopts the portion of the Magistrate Judge's Report addressing the relevant facts of the record. (Doc. No. 23 at 2-12.)

**II.  STANDARD OF REVIEW**

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health &*

*Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the Commissioner's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

    A. *Plaintiff objects to the Report's recommended finding that the ALJ did not err in rejecting a treating physician's opinion in favor of the opinion of a non-examining source.*

4

Plaintiff objects to the Report's conclusion that the ALJ properly weighed the medical opinion evidence before him. According to Plaintiff, the ALJ erred in rejecting the opinion of Dr. Chihombori,[1] Plaintiff's treating physician, in favor of the opinion of Dr. Misra, a non-examining state agency medical consultant. (Doc. No. 24 at 2-3.) Plaintiff argues that the ALJ was required to give controlling weight to Dr. Chihombori's opinion because, contrary to the ALJ's finding, her opinion is not inconsistent with other evidence in the case record. (*Id.*) In addition, Plaintiff argues that because Dr. Misra based her assessment on incomplete information, her opinion is not entitled to great weight. (*Id.*)

If a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or "inconsistent with other substantial evidence in the case record," an ALJ may properly refuse to assign it controlling weight. 20 C.F.R. § 404.1527(d); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc). When an ALJ refuses to adopt a treating source's opinion as controlling, he or she must weigh the opinion according to several factors, including its supportability and consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2). In addition, the ALJ must provide "good reasons" for the weight he or she gives to the treating source's opinion. (*Id.*) "Good reasons" are those that "are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

---

[1] Dr. Chihombori completed two assessments, a physical capacities evaluation ("PCE") and a Medical Source Statement, and although Plaintiff did not specify which assessment she contends is entitled to controlling weight, the medical findings she refers to in her brief align with the PCE. (Doc. No. 17 at 10.)

The ALJ did supply good reasons for his determination that Dr. Chihombori's PCE was not entitled to controlling weight, and the finding is supported by substantial evidence. First, the ALJ noted that objective medical evidence does not support the severe limitations Dr. Chihombori's assessed in the PCE. (Tr. 14, 19.) With regard to the limitations Dr. Chihombori assessed for Plaintiff's use of her hands, the ALJ cited the relevant findings of Dr. Payne, a state agency consultative examiner who completed an "all systems examination" of Plaintiff, which included an examination of her hands. Dr. Payne found that Plaintiff had normal blood pressure, mobility, strength joint ranges of motion, pulses, reflexes, and abilities to grasp and manipulate. (Tr. 15.) The ALJ also relied on Dr. Payne's report and Dr. Chihombori's notes in concluding the objective medical evidence likewise failed to support findings of pedal edema, hypertension, leg and foot pain. (Tr. 15-16.) The ALJ noted that Dr. Payne and Dr. Chihombori both indicated Plaintiff's blood pressure was well-controlled (Tr. 251) and Dr. Payne described edema as only a "trace" in his report (Tr. 255). These findings lent support to the ALJ's conclusion that the objective medical evidence on file failed to substantiate Dr. Chihombori's assessment of severe functional limitations.

Second, the ALJ noted that Dr. Chihombori's PCE is inconsistent with other opinion evidence. (Tr. 19.) Dr. Payne found that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for at least two hours, and had no sitting restrictions. (Tr. 259.) Dr. Misra was slightly more restrictive, adding some postural and environmental limitations. (Tr. 265-68.) The environmental limitations she assessed were confined to pulmonary irritants only. (*Id*.) Meanwhile, Dr. Chihombori's PCE recommended much stricter limitations than both Dr. Payne's and Dr. Misra's assessments. Dr. Chihombori opined that Plaintiff could stand/walk for one hour only, could not push/pull or finely manipulate with either

6

hand, and had stricter postural and environmental limitations (the PCE stated that in addition to pulmonary irritants, Plaintiff should not be exposed to changes in humidity and temperature). (Tr. 273-74.) The Magistrate Judge noted that the PCE is also slightly inconsistent with Dr. Chihombori's own Medical Source Statement, which she completed four months after completing the PCE. (Doc. No. 23 at 23.) The Medical Source Statement indicated that Plaintiff could/stand walk for less than two hours, that her ability to sit was not restricted, and that her ability to use her hands for fine and gross manipulation was not limited. (Tr. 355-57.) The inconsistencies between the PCE and other opinion evidence also provided a reasonable basis for the ALJ's conclusion that Dr. Chihombori's PCE was not entitled to controlling weight.

Third, the ALJ found that the severe functional limitations Dr. Chihombori assessed in the PCE are inconsistent with Plaintiff's daily activities. (Tr. 18-19.) The ALJ pointed out that Plaintiff acknowledged she washes dishes, does laundry, drives, shops for groceries, uses a computer for twenty-thirty minutes at a time, cooks, feeds pets, and does other household chores. (*Id.*) These activities suggested to the ALJ that Dr. Chihombori was too restrictive with regard to lift/carry, standing/walking, postural, and environmental limitations. (Tr. 19.)

Plaintiff objects that her daily activities are not actually inconsistent with the limitations in the PCE. (Doc. No. 24 at 3.) Plaintiff cites a function report that she filled out as well as her testimony. (*Id.*) The function report states that Plaintiff can cook for only five to fifteen minutes at a time, cannot stand on her feet for elaborate prep time, cannot carry laundry baskets, and cannot vacuum and clean upstairs. (Tr. 125.) With regard to grocery shopping, the report states that Plaintiff has to "slowly travel through the store to buy groceries." (Tr. 126.) Plaintiff repeated the same allegations in her testimony. (Tr. 32-33.)

7

A claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms are accorded credibility only insofar as the statements are consistent with all of the available evidence. 20 C.F.R. § 404.1529(c)(3). In this case, the ALJ properly exercised his discretion in declining to give credibility to the statements Plaintiff made in the function report and her testimony regarding the severity of her symptoms. The same evidence that conflicted with the severe functional limitations Dr. Chihombori's assessed in her PCE—the objective medical findings, the contrary medical opinions of Dr. Misra and Dr. Payne, and Plaintiff's daily activities—also conflicted with Plaintiff's statements regarding the severity of her symptoms. (Tr. 19.) The ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence, and supports his ultimate finding that Dr. Chihombori's opinion should not be given controlling weight.

Plaintiff also objects that the ALJ erred in assigning great weight to the opinion of Dr. Misra because Dr. Misra did not have the entire record in front of her when she completed her assessment. (Doc. No. 24 at 3.) However, "there is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record" in order to be accorded greater weight than a treating physician's opinion. *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011). Accordingly, the fact that Dr. Misra did not examine the entire case record before completing her assessment did not preclude the ALJ from assigning the assessment great weight.

The objective medical findings, contrary opinion evidence, and Plaintiff's daily activities provided substantial evidence for the ALJ's decision to reject Dr. Chihombori's PCE in favor of Dr. Misra's opinion. The ALJ also complied with the "good reasons" requirement by discussing the specific evidence that, in his judgment, called for discounting Dr. Chihombori's PCE.

8

B. *Plaintiff objects to the Report's recommended finding that the ALJ appropriately declined to seek the testimony of a medical expert and adequately considered Plaintiff's obesity before deciding that Plaintiff's impairments do not medically equal Listing 3.02.*

Plaintiff contends that the ALJ did not follow proper procedure in determining that Plaintiff's impairments do not medically equal the listing for chronic pulmonary inefficiency, which, if equaled, would automatically result in a finding of disability. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 3.02. According to Plaintiff, because the ALJ assigned great weight to Dr. Misra's assessment—which was completed before Plaintiff submitted additional evidence, including Dr. Chihombori's PCE and Medical Source Statement—the ALJ's finding that Plaintiff's impairments do not equal Listing 3.02 failed to take into account all of the available evidence. (Doc. No. 24 at 3-4.) Specifically, Plaintiff argues that Social Security Ruling 96-6p, 1996 WL 374180 (Jul. 2. 1996), required the ALJ to seek expert opinion before deciding the medical equivalence issue. (Doc. No. 24 at 4.) She also argues that the ALJ failed to consider Plaintiff's obesity in violation of Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002).

　　　　1. *Medical expert opinion*

Under 20 C.F.R. § 404.1527(f)(2)(iii), the ALJ "may . . . ask for and consider" opinions from medical experts on (1) the nature and severity of a claimant's impairments and on (2) whether the impairments medically equal any listed impairment. The Sixth Circuit has interpreted this section as "giv[ing] the ALJ discretion to decide whether to call a medical expert." *Davis v. Chater*, 104 F.3d 361, No. 95-2235, 1996 WL 732298, at *2 (6th Cir. 1996). At the same time, SSR 96-6p states:

> Longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the

[ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

SSR 96-6p, at *3. The Ruling explains that the requirement that expert opinion evidence be received into the record is met as long as the record includes one of several listed documents signed by a state agency medical or psychological consultant. *Id.* The Ruling limits the circumstances when the ALJ must seek an *updated* medical opinion on the issue of equivalence as follows:

> When no additional evidence is received, but in the opinion of the [ALJ] the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, at *4. SSR 96-6p is essentially consistent with § 404.1527(f)(2)(iii) in that it gives the ALJ considerable discretion in deciding whether or not to call an expert. The ALJ is not required to consult a medical equivalence expert under SSR 96-6p unless he or she has determined that (1) the record may support a judgment of equivalence or that (2) the state agency consultant might have concluded the claimant's impairments equaled a Listing had additional evidence been available to him or her. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830-31 (6th Cir. 2009) (finding that SSR 96-6p requires updated medical opinion when symptoms, signs, and findings "suggest to the ALJ" that the claimant's impairments equal a listing).

Plaintiff's argument fails, as the ALJ was not required to call a medical equivalence expert in this case. The ALJ adopted the opinion of Dr. Misra, a state agency medical consultant. (Tr. 19.) The ALJ did not at any point indicate that he felt the objective medical evidence supported a finding of medical equivalence. To the contrary, the ALJ's reasoning for

10

adopting Dr. Misra's assessment, which concluded that Plaintiff's impairments fell short of the Listings, was that this assessment was most consistent with the evidence. (Tr. 19.) The ALJ also specifically considered the evidence that was unavailable to Dr. Misra at the time she completed her evaluation, including Dr. Chihombori's assessments, but proceeded to find that Dr. Misra's opinion deserved the most weight regardless. (*Id.*) As neither prong of SSR 96-6p was met, the ALJ was not required to seek expert testimony.

Plaintiff argues that the Magistrate Judge improperly relied on *Davis* in her analysis. (Doc. No. 24 at 4.) Plaintiff is correct that the *Davis* court applied § 404.1527(f)(2)(iii) to an ALJ's finding that the claimant's impairments were not sufficiently severe, not a finding of non-equivalence. 1996 WL 732298, at *2. However, § 404.1527(f)(2)(iii) covers both types of determinations. Plaintiff maintains that SSR 96-6p makes the issue of medical equivalence a "special case" that always requires expert testimony. (Doc. No. 24 at 4.) To reiterate, however, the Ruling is consistent with § 404.1527(f)(2)(iii) in that it leaves the ALJ with considerable discretion in deciding whether or not to seek an updated expert opinion. Because the ALJ did not at any point determine either that the record may support a judgment of equivalence, or that Dr. Misra might have concluded Plaintiff's impairments equaled Listing 3.02 in light of additional evidence, the ALJ did not err in declining to call a medical expert.

### 2. *Consideration of Plaintiff's obesity*

Plaintiff further objects that the ALJ did not adequately consider Plaintiff's obesity before deciding that her impairments fell short of Listing 3.02. (Doc. No. 24 at 4.) Although the Social Security Administration no longer qualifies obesity as a "listed impairment," which, if met, would result in an automatic finding of disability, adjudicators are still required to consider the effects of obesity when evaluating disability claims. SSR 02-01p, at *3. The Ruling specifically

states that a finding of equivalence is appropriate if "an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." *Id.* at \*5.

The Sixth Circuit has ruled that SSR 02-01p "does not mandate a particular mode of analysis," but instead simply requires the ALJ to consider obesity at all stages of the evaluation process. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). In addition, the ALJ does not need to "spell out the weight he gave to each factor in his step three analysis" or even make specific mention of obesity. *Id.* Rather, the ALJ may comply with the requirement that he or she consider obesity by utilizing medical opinions from sources that acknowledge the claimant's obesity in their analysis. *Coldiron v Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010).

The ALJ in this case gave adequate consideration to the effects of obesity in his analysis of medical equivalence. First, the ALJ acknowledged Plaintiff's obesity in his findings of fact and concluded it was a "severe" impairment. (Tr. 14.) Second, the ALJ noted that Dr. Misra, the medical expert designated by the Commissioner, found that Plaintiff did not have an impairment or combination of them that medically equaled a Listing. (Tr. 16.) While Dr. Misra did not mention Plaintiff's obesity in her evaluation, Dr. Payne, whose medical findings served as the basis for Dr. Misra's conclusions, acknowledged Plaintiff's obesity in his report. (Tr. 253.)

Third, the ALJ expressly considered Plaintiff's obesity with respect to her ability to ambulate effectively. (Tr. 16.) While ineffective ambulation is relevant to the evaluation of musculoskeletal impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.00, rather than the respiratory impairments in Listing 3.02, the fact that the ALJ specifically considered obesity in evaluating Plaintiff's musculoskeletal system indicates that the ALJ was aware of the possible

12

effects of obesity on Plaintiff's impairments and factored it into his analysis of medical equivalence at step three. In sum, the ALJ complied with SSR 02-01p by giving adequate consideration to the effects of Plaintiff's obesity in his analysis of medical equivalence. His conclusion that Plaintiff's impairments fell short of the Listings was supported by substantial evidence.

> C. *Plaintiff objects to the Report's recommended finding that the ALJ did not err in relying on the testimony of the vocational expert, and that his failure to comply with SSR 00-4p is a harmless error.*

Once the ALJ has decided at step four of the disability evaluation process that the claimant cannot perform past relevant work, the ALJ must determine at step five whether or not the claimant, given his or her age, education, work experience, and residual functional capacity ("RFC"), is able to perform other work. *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 774 (6th Cir. 2008) (citing 20 C.F.R. § 404.1520(a)(4)(i-v)). Plaintiff contends that the ALJ made several errors at step five of the disability evaluation process. First, Plaintiff argues that the ALJ erred in relying on the flawed testimony of the vocational expert ("VE"). She asserts that the VE misclassified judgment, communication, and attending (giving attention) as skills. (Doc. No. 24 at 5.) Second, she argues that Rule 201.00(f) of Appendix 2 to Subpart P, 20 C.F.R. Part 404, is applicable to Plaintiff, meaning the Commissioner must establish that Plaintiff's vocational skills are "directly" transferable from her past work as a teacher to sedentary jobs, such as a receptionist or information clerk. (*Id.*) Third, Plaintiff argues that the ALJ's failure to question the VE about any conflicts his testimony might have with the Dictionary of Occupational Titles ("DOT") in violation of SSR 00-4p was not a harmless error. (*Id.* at 6.)

*1. VE's classification of judgment, communication, and attending*

At step five, the ALJ may seek the testimony of a VE to help determine whether the claimant possesses vocational skills that can be used in other work, and, if so, the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e); *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009). When the claimant has no transferable skills, a finding of disability may be required in some cases. SSR 82-41, 1982 WL 31389, at *1 (Jan. 1, 1982). The burden is on the Commissioner to show that there is "a significant number of jobs in the economy that accommodate the claimant's [RFC] (determined at step four) and vocational profile." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); 20 C.F.R. § 404.1520(g)(1).

In the instant case, the ALJ found, based on the testimony of the VE, that Plaintiff's skills included judgment, communication, and attending. (Tr. 20.) SSR 82-41 defines a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." SSR 82-41, at *2. The Ruling draws a distinction between "acquired" work skills and worker aptitudes. In evaluating the skill level of past relevant work and or potential occupations, skills play the decisive role, while aptitudes are relevant only to the extent that they have been used in connection with a specific work activity. *Id.* The ruling mentions "alertness" as an example of a worker aptitude, but otherwise offers little guidance on differentiating skills from aptitudes. *Id.*

Several Sixth Circuit decisions have elaborated on the distinction in greater detail. In *Weaver v. Secretary of Health & Human Services*, the court stated that "an aptitude is an innate ability while a skill is a learned ability." 722 F.2d 310, 311-12 (6th Cir. 1983) (holding that

average intelligence, high average space relations, average form relations, and above average finger and manual dexterity are aptitudes, not skills). In *Ellington v. Secretary of Health & Human Services*, the court described skills as "learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise." 738 F.2d 159, 161 (6th Cir. 1983) (holding that ability to exercise judgment and ability to be responsible for a work product are too vague to constitute skills). *See also Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 773 (6th Cir. 1987) (holding that ability to operate a motor vehicle is an aptitude); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984) (holding that ability to maintain a production standard and ability to use hand tools are aptitudes).

Plaintiff is correct that "judgment" is best characterized as an aptitude, not a skill. *Ellington*, 738 F.2d at 161. Because neither the VE nor the ALJ attempted to connect Plaintiff's ability to exercise judgment to a specific work activity, *Ellington* is applicable. However, the ability to effectively communicate and the ability to give attention are specific enough to be fairly characterized as skills. Although being able to communicate and give attention are attributes that most people share, being able to do so in a classroom setting, while dealing with large numbers of students at once, may be fairly characterized as requiring a "learned mental discipline." *Ellington*, 738 F.2d at 161 (describing "learned mental discipline" as a type of skill). Plaintiff's teaching experience provided a reasonable basis for the ALJ's conclusion that Plaintiff's ability to communicate and her ability to give attention, honed and developed during her years as a teacher, "giv[e] rise to potentially transferable skills." *See* SSR 82-41, 1982 WL 31389, at *3.

## 2. Transferability of Plaintiff's skills

An ALJ can use medical-vocational guidelines (the "grid") in 20 C.F.R. Part 404, Subpart P, Appendix 2, at step five of the disability evaluation process. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423-24 (6th Cir. 2008). The grid, in conjunction with the claimant's RFC, age, education and work experience, are used to determine whether the claimant can successfully adjust to work other than his or past relevant work. *Kyle*, 609 F.3d at 855. Rule 201.00(f) states that "in order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 or over), there must be little, if any, vocational adjustment." 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Sixth Circuit has interpreted Rule 201.00(f) as requiring the Commissioner to establish that the claimant has skills which are "directly" transferable. *Weaver*, 722 F.2d at 311 (6th Cir. 1983).

Plaintiff seems to argue that her case is governed by Rule 201.00(f), which would place on the Commissioner the burden of showing that Plaintiff's skills are "directly" transferable to work as a receptionist or information clerk. (Doc. No. 24 at 5.) Plaintiff asserts that the Commissioner has failed to meet this burden. (*Id.*) Plaintiff's argument that her case is governed by Rule 201.00(f) is without merit for the simple reason that Plaintiff does not fall in the applicable age category. The Sixth Circuit has found that, for the purposes of applying the grid, the relevant time for calculating a claimant's age is the date of the ALJ's decision. *E.g., Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In the instant case, Plaintiff was fifty years old at the time that the ALJ issued his decision. (Tr. 20.) The Commissioner was not required to show that Plaintiff's skills are "directly" transferrable to other occupations.

### 3. Failure to comply with SSR 00-4p

SSR 00-4p states that the ALJ has an affirmative duty to ask the VE whether or not his or her testimony is consistent with the DOT. SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). When there is an apparent unresolved conflict, the ALJ must obtain a reasonable explanation for the conflict from the VE before relying on the testimony. *Id.* The Sixth Circuit has held that the failure of an ALJ to question the VE about potential inconsistencies is a reversible error when such inconsistencies are in fact indentified. *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 575 (6th Cir. 2007); *Coleman v. Astrue*, No. 2:09-CV-0036, 2010 WL 4094299, at *6 (M.D. Tenn. Oct. 18, 2010) (finding a reversible error when the ALJ based his entire conclusion on VE testimony that was identified as inconsistent with DOT).

The court in *Lancaster* did not decide whether a mere failure to comply with the procedural requirement, absent a showing of any actual conflict, also entitles a plaintiff to relief. This Court, however, has found that such a failure amounts to a harmless error when there is "no showing of any actual conflict . . . [and] no record of any objection from counsel to either the ALJ or the Appeals Council." *Wenner v. Astrue*, No. 3:09-CV-1153, 2011 WL 1548406, at *7 (M.D. Tenn. April 22, 2011), *adopted*, No. 3:09-CV-1153, 2011 WL 1868840 (M.D. Tenn. May 16, 2011).

Plaintiff's objection that the ALJ's failure to comply with SSR 00-4p was not a harmless error fails. Plaintiff has not identified any actual inconsistencies between the VE's testimony and the DOT. She merely asserts that "there is no evidence that the specific 'skills' identified by the VE relate in any way to the jobs identified, which are not in the same way as Plaintiff's former occupation," but, absent any specific reference to the DOT, that statement fails to allege any actual inconsistencies between the VE's testimony and the DOT. (Doc. No. 24 at 6.) There

17

is also no record of objection from Plaintiff's counsel to the ALJ during the hearing over the ALJ's failure to ask the VE about any potential inconsistencies. As a result, this Court must disagree with Plaintiff's argument that the ALJ's failure to comply with SSR 00-4p was harmless error.

**IV.** **CONCLUSION**

For the reasons stated above, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the Magistrate Judge's Report in its entirety. The decision of the Commissioner is **AFFIRMED**.

It is so ORDERED.

Entered this the \_\_\_\_\_30th_____ day of June, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT